### WABER v. MONTGOMERY WARD & CO. et al. (two cases).

#### Nos. 8586, 8587.

Circuit Court of Appeals, Seventh Circuit.

May 19, 1945.

Rehearing Denied June 14, 1945.

Bair & Freeman, William P. Bair and Will Freeman, all of Chicago, Ill., and Vernon D. Beehler, of Los Angeles, Cal., for James W. Waber.

Eugene M. Giles, Herbert L. Shepard, and Albert F. Mecklenburger, all of Chicago, Ill., for Montgomery Ward & Co. and United States Rubber Co.

Before MAJOR, KERNER, and MINTON, Circuit Judges.

MAJOR, Circuit Judge.

This is a suit for infringement of United States Patent No. 1,808,091, issued to plaintiff June 2, 1931. The defenses of invalidity and noninfringement were relied upon. The court found the patent invalid, but infringed if valid. Plaintiff appeals from the finding of invalidity and defendants appeal from that of infringement.

The patent is entitled "Pneumatic Tire Tube," concerning which the patentee states:

"My invention relates to a self healing inner tube for use inside of the outer casings of automobiles and trucks, and also to the process of making the same.

"The object of the invention is to provide a tube so designed and processed, that, when same is inflated if punctured, the pressure loss from the puncture is either entirely prevented or reduced to a minimum. * * *

"A feature of my invention is the provision of a tube structure having an inner layer of elastic material which is formed of a predetermined size which inner layer then has applied to the outer circumference thereof a layer of mastic puncture healing material and an outer layer of elastic material, which structure is then cured in a mold of substantially the same size and shape as the inner contour of the casing which receives the tube."

The patentee further states: "The tube of the present invention is formed the same or nearly the same size and shape as it will assume when inflated in the casing and on the rim. In other words, so shaped and sized that it suffers little or no distortion when in use and inflated and so made that the part of the tube which, in use, underlies the tread portion of the casing is much thickened, allowing for an annular cavity throughout the thickened portion of the tube, which cavity is filled with a self sealing plastic compound that tightly adheres to a nail or other puncturing object when it is forced through the walls of the inner tube and the plastic material in the cavity so that the loss of pressure resulting from the puncture is entirely prevented in almost every case and in the few exceptions pressure loss is so reduced that it is negligible."

As to the process employed, the patentee states: "Rubber stock was milled and compounded similar to that in general use in the rubber industry today. From this stock an inner tube is formed, the valve inserted, and the whole formed into an endless rubber ring capable of some distention by having compressed air forced through the valve. The tube in this condition resembles the ordinary inner tube in general use partially inflated except that the tube need not be vulcanized."

The patentee stresses that in his previous efforts, as well as those of others, it was attempted to build the tube on a mandrel or core, after which the ends were spliced. The results thus obtained, so it is stated, were unsatisfactory due to the difficulty of making the splice, which also resulted in wrinkles and distortions in the inner layer of the tube, thereby reducing its length of service. This objection, so it is claimed, was overcome by the process suggested, and it is emphasized that the employment of an air core or an inflated inner member which forms the basis for the finished product is an important feature of the invention.

Claim 2, a process claim, and claims 3 and 6, product claims, are in suit. We think it is necessary to set forth claim 2 only inasmuch as it claims the process used in making the product claimed in claims 3 and 6. Claim 2 is as follows: "The method of making an inner tube for pneumatic tires which consists in forming an endless tube of vulcanizable rubber whose dimensions are slightly smaller than the cavity in the tire casing in which said tube is intended to be used, expanding said tube by internal pressure, applying to the outer circumference of said tube while inflated a layer of plastic sealing compound, covering the said compound with a layer of vulcanizable rubber which extends beyond the edges of the compound and contacts with the endless tube for adhesion thereto and

curing the entire tube structure in a mold whose cavity is substantially equal to the size and shape of the cavity of the tire casing in which said tube is intended to be used."

The method thus described consists of four steps: (1) forming an endless tube of vulcanizable rubber whose dimensions are slightly smaller than the cavity in the tire casing in which said tube is intended to be used; (2) expanding said tube by internal pressure, applying to the outer circumference of said tube while inflated a layer of plastic sealing compound; (3) covering the said compound with a layer of vulcanizable rubber which extends beyond the edges of the compound and contacts with the endless tube for adhesion thereto; and (4) curing the entire tube structure in a mold whose cavity is substantially equal in size and shape to the cavity of the tire casing in which said tube is intended to be used.

As we understand, step (2) is relied upon as distinguishing the process from that disclosed by the prior art and which, it is claimed, gives to the process a patentable status. It must be assumed, so we think, that steps 1, 3 and 4 were old in the art; in fact, we do not understand plaintiff to make a contrary contention. The essential point with reference to step (2) is that it teaches the application of the plastic sealing compound to the outer circumference of a tube while inflated, in contrast to what had theretofore been disclosed, that is, its application to a tube in its deflated form. Plaintiff's contention in this respect is stated in its brief as follows: "This placing of the plastic material on the base tube when the base tube has the size and form it will have in ultimate use, so that the plastic then takes exactly the same position it will have in ultimate use, is new with Waber. No one but Waber has put on the plastic sealing layer in this way."

■ A large number of prior art patents were offered in evidence, the most pertinent no doubt being Wallace No. 1,258,-506, issued in 1918, Crombie No. 1,498,017, issued in 1924, and Wildman No. 1,601,013 issued in 1926. It is hardly open to dispute but that all the steps shown in Waber's process claim in suit and all the elements shown in Waber's product claims in suit are found in these prior art patents.

The Wallace patent is entitled "Process of Making Tires." His process starts with an ordinary inner tube, and while he does not explain its relative size and shape, he does state it is inflated to give it the desired size so as to constitute a suitable working or building surface while the tube or tire is being built. Wallace places this starting tube on a work-holding rim, while Waber places it on a form or building drum. Up to this point, the two processes are substantially, if not precisely, the same. In the next step, Wallace provides for a layer of protective material laid and worked on the top in annular form over the periphery and down the sides as far as desirable, while Waber applies to the circumference of the tube while inflated a layer of sealing compound. Wallace then provides a ply or layer of plastic compounded rubber which may or may not enclose the entire tube the same as the cover layer provided by Waber. This completed assembly of Wallace is placed in a mold of the size and shape of the casing cavity in which the tube is intended to be used, and the assembly is vulcanized. Waber's last step is precisely the same. Thus the only difference between the two processes is the nature of the intermediate layer, Wallace suggesting a ply of compounded rubber and Waber a layer of plastic sealing compound. True, it appears that Wallace had in mind an intermediate layer of puncture-resistant material and that Waber refers to this intermediate layer as a plastic sealing compound. In other words, it was Wallace's theory that this layer served to prevent puncture, while Waber's method contemplated the sealing of a puncture so as to prevent a reduction in pressure.

It thus appears that Waber's claim to invention over Wallace must rest solely on his substitution of a layer of plastic sealing compound for Wallace's layer of puncture-resistant material. We see no substantial difference in the method disclosed in these two patents insofar as it pertains to the application of this intermediate layer. In our view, Waber is anticipated by Wallace. See Pfanstiehl Chemical Co. v. American Platinum Works, et al., 3 Cir., 135 F.2d 171, 174; Carmichael v. Jackson, 7 Cir., 192 F. 937, 938.

Crombie discloses a process for constructing inner tubes in such a manner as to provide for the automatic closing of punctures. It provides for an intermediate layer similar to that of Waber of a self healing substance. This intermediate layer is applied to an inner tube covered by an

outer layer and vulcanized in the usual manner. As to this disclosure, we only need to point out that this intermediate layer corresponds to the intermediate layer of Waber.

Even more pertinent than Crombie is Wildman, entitled "Self Sealing Inner Tube," which discloses on the tread portion of the tire 5 plies instead of 3. The inner and outer plies, 1 and 5, are of elastic rubber. The next plies, 2 and 4, are of stiffer, less elastic rubber, and the intermediate layer or ply is of raw, unvulcanized rubber or plastic sealing compound. Of this patent, the District Court stated: "As far as the Court can see, there is everything in that Wildman patent issued in 1926 * * * that is to be found in the patent in suit—everything, plus two plies 2 and 4 of stiff rubber. But as far as the Court can see, all the ideas that are embodied in the patent in suit were embodied in that Wildman patent * * *."

Plaintiff strongly urges that Wildman is a reference of little or no merit. This is so for the reason, so it is argued, that Wildman does not have Waber's step of building the extra plies on a base tube while it is inflated in the ring shape it will have when in use. It is true that Wildman contemplated in the main the idea of building the plastic and extra layers on the tube while it was on a straight pole mandrel. Even so, however, he shows an intermediate plastic layer designed for the same purpose as that of Waber and by which, as already pointed out, Waber attempts to distinguish his disclosure from that of Wallace. But more than that, Wildman also suggests in his specifications: " * * * but less operations are required and certain advantages accrue in molding the tube of the same true circular shape as the casing and also a shape corresponding exactly to the cross section of the cavity or inner walls of the casing * * *."

While this language is not entirely clear, we are inclined to agree with the defendants in their contention that Wildman was referring to an inflated inner tube to which the additional plies were to be added on the tread side. This view is strengthened by Wildman's further statement:

"* * * in making the tube in this way the inner and outer plies 1 and 5 may be shaped while the rubber is in an unvulcanized state and adapted to be readily fitted to the mold to produce a wall of uniform thickness without buckles or folds at the inner circumference of the tube * * *."

Assuming, as we think we must, that Wildman discloses a process by which additional plies could be constructed on an inflated inner tube, we are of the view that Waber is also anticipated by Wildman. At any rate, we think that Waber cannot escape anticipation by a process which calls for 3 plies in contrast to the 5 ply process of Wildman. Especially is this so inasmuch as the function to be performed was the same whether the tube constructed of 3 or 5 layers. McClain v. Ortmayer, 141 U.S. 419, 429, 12 S.Ct. 76, 35 L.Ed. 800; Utah Radio Products Co. v. General Motors Corporation, 2 Cir., 106 F. 2d 5, 8.

Even though it be assumed, however, that Waber is not anticipated by either Wallace or Wildman, we still are of the view that Waber's disclosure did not amount to invention over this prior art. As pointed out, Wallace discloses a process for the making of an inner tube precisely the same as that of Waber with the exception of the nature of the material employed in the intermediate layer. The nature of this intermediate layer, however, as disclosed by Waber, is shown by both Crombie and Wildman. We realize that a hindsight view is not a very reliable criterion, especially when directed at a claimed invention, but nevertheless we are of the opinion that a person trained and skilled in the making of tubes, by studying and understanding this prior art, could have duplicated the accomplishment of Waber. Our conclusion as to the process claim is equally applicable to the product claims in suit.

Plaintiff places much reliance upon his so-called commercial success resulting from the patent in suit. In our view; it is far less impressive, however, than plaintiff would have us believe. True, the record discloses some large business concerns which used plaintiff's tubes and found them satisfactory. The proof, however, falls far short of showing any widespread demand for them; in fact, there were no substantial sales for the first six years after the patent issued. During the peak year of 1940, something like 100,000 Waber tubes were sold. The record discloses, however, that approximately 35 to 40 million inner tubes were sold in the United States annually. The defendant United States Rubber Company sold in the vi-

cinity of 10 million annually. While plaintiff's product appears to have had merit, the proof does not indicate that it was acclaimed by the public in a manner which is of any assistance to the plaintiff in sustaining the validity of his patent.

As we have concluded that the patent is invalid, the question of infringement becomes moot and need not be decided. Therefore, the judgment holding the patent invalid, from which plaintiff appealed, is affirmed. Defendants' appeal from the holding of infringement is dismissed.